# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH DAKOTA
# WESTERN DIVISION

---

**ELIZABETH LONE EAGLE, et al.,**

      Plaintiffs,

v.

**SOUTH DAKOTA BOARD OF MINERALS AND ENVIRONMENT, et al.,**

      Defendants.

Case No.: 5:26-cv-5068

---

## PLAINTIFFS' EXHIBIT LIST

---

**Exhibit 1** — South Dakota Board of Minerals and Environment Official Meeting Minutes, March 18, 2026. Documents the Board's 8-0 vote to overturn Hearing Officer Morris's denial of translation services. Section of minutes captioned "Translation Services."

**Exhibit 2** — Intervenor's Proposed Procedural Order for Lakota Language Interpretation Services, August 15, 2025. Original motion requesting State-funded Lakota language interpretation and translation services for all phases of the EXNI 453 proceeding.

**Exhibit 3** — Intervenors Requesting Lakota Interpretation Services and Proposed Interpreters, August 26, 2025. Submitted per Hearing Officer Morris's August 21, 2025 instructions.

**Exhibit 4** — Email from Elizabeth Lone Eagle to Brenda Binegar and David McVey transmitting interpreter submission, August 26, 2025. Includes request for acknowledgment of receipt documenting anticipated state non-responsiveness.

**Exhibit 5** — Order by Hearing Chair Bob Morris Denying Motion Requesting Lakota Language Interpreter Services, November 10, 2025.

**Exhibit 6** — Declaration of Elizabeth Lone Eagle regarding sequence of interpretation services requests and state's pattern of non-response, prepared October 2025; not previously filed.

**Exhibit 7** — Appeal to the South Dakota Board of Minerals and Environment of Hearing Officer's Denial of Motion for Lakota Language Interpretation Services, January 19, 2026.

**Exhibit 8** — Intervenor's Motion to Reconsider and Modify Scheduling Order, October 2, 2025.

**Exhibit 9** — Intervenor's Motion for Protective Order on Service and Deadlines, October 2, 2025. Documents USPS access failures on Pine Ridge and Cheyenne River Reservations.

**Exhibit 10** — Addendum to Intervenor's Motion for Reconsideration of Electronic Service, October 2025. Includes Senator Rounds's public confirmation of systemic USPS failures in South Dakota.

**Exhibit 11** — Motion for Expedited Administrative Review and Relief from Due Process Violations addressed to DANR Secretary Hunter Roberts, October 2025.

**Exhibit 12** — EXNI 453 Scheduling Order Due Dates, September 2, 2025. Establishes all pre-hearing deadlines missed by Lakota-speaking intervenors due to denial of language access.

**Exhibit 13** — Letter from Elizabeth Lone Eagle to Mike Lees, DANR Minerals, Mining, and Superfund Program Administrator, April 23, 2026. Documents inadequacy of proposed interpreter compensation rate, GSA cost analysis, and four-person team requirement.

**Exhibit 14** — Memorandum from Elizabeth Lone Eagle to Board Chairman Glenn Blumhardt, April 23, 2026. Appellate vulnerability analysis; invokes Loper Bright, Lau v. Nichols, Goldberg v. Kelly.

**Exhibit 15** — Memorandum from Elizabeth Lone Eagle to Attorney General Marty Jackley, April 23, 2026. Documents McVey's conduct and §1983/Title VI exposure to the State.

**Exhibit 16** — Memorandum from Elizabeth Lone Eagle to Governor Larry Rhoden, April 23, 2026. Documents financial and legal risk to the State; $300 million surplus argument; Helen's Law commitment.

**Exhibit 17** — Memorandum from Elizabeth Lone Eagle to DANR Secretary Hunter Roberts, April 23, 2026. Direct notice to DANR Secretary with request for corrective action before May 18 hearing.

**Exhibit 18** — South Dakota Searchlight news article: "Hearing on proposed Black Hills uranium drilling opens with hours of opposition testimony," May 18, 2026. Independently corroborates law enforcement presence at the Mueller Civic Center on day one. Available at: https://southdakotasearchlight.com/2026/05/18/hearing-on-proposed-black-hills-uranium-drilling-opens-with-hours-of-opposition-testimony/

**Exhibit 19** — South Dakota HB 1219 (Helen's Law), enrolled bill text, 2026 South Dakota Legislature, 101st Legislative Session. Signed by Governor Rhoden March 9, 2026; effective July 1, 2026.

**Exhibit 20** — Affidavit of Vonda Long authenticating video recording of Day 2 recess exchange between Plaintiff Lone Eagle, Hearing Chair, and Defendant McVey, Mueller Civic Center, Hot Springs, South Dakota, May 19, 2026.

**Exhibit 21** — Video/audio recording of Day 2 recess exchange between Plaintiff Lone Eagle, Hearing Chair, and Defendant McVey, recorded by Vonda Long inside the Mueller Civic Center auditorium, May 19, 2026. Submitted on flash drive.

**Exhibit 22** — State-recorded video of EXNI 453 hearing proceedings, recorded and uploaded daily by DANR at the conclusion of each hearing day. Available at: https://danr.sd.gov/Environment/MineralsMining/Exploration/NewEXNIS.aspx

**Exhibit 23** — Independent video recordings of EXNI 453 hearing proceedings posted by NDN Collective and individual observers. Current hearing coverage available at NDN Collective Facebook page: https://www.facebook.com/NDNCollective

Respectfully submitted,

Elizabeth Lone Eagle

Pro Se Plaintiff

7958 Lakota Prairie Drive, Apartment 53

Kyle, SD 57752

bridgeradvocate@gmail.com

605-200-6800

Dated: May 20, 2026

## EXHIBIT 1

## SOUTH DAKOTA BOARD OF MINERALS AND ENVIRONMENT
### Official Meeting Minutes
March 18, 2026 — 10:00 a.m. Central Time

*Note: Minutes reflect "Matthew Training Center, 523 East Capitol Avenue, Pierre, South Dakota" as the listed address. Plaintiff Lone Eagle has firsthand knowledge that this meeting was held at the Capitol building, Pierre, South Dakota.*

---

## CALL TO ORDER

The meeting was called to order by Chairman Glenn Blumhardt. The roll was called, and a quorum was present. The meeting was streaming live on SD.net, a service of South Dakota Public Broadcasting.

## BOARD MEMBERS PRESENT

Bob Ewing, Gregg Greenfield, Jessica Gruenwald, Gary Haag, Doyle Karpen, Rhett Miller, and Bob Morris participated in person. Chairman Glenn Blumhardt and Laurie Schultz participated via telephone.

## BOARD MEMBERS ABSENT: None.

---

## REQUESTS FOR THE BOARD TO OVERRULE PRE-HEARING ORDERS ISSUED BY HEARING CHAIR MORRIS IN THE MATTER OF CLEAN NUCLEAR ENERGY CORPORATION URANIUM EXPLORATION PERMIT APPLICATION; EXNI 453

**David McVey**, Assistant Attorney General, appeared on behalf of the Board of Minerals and Environment.

**Steve Blair**, General Counsel, appeared on behalf of the Department of Agriculture and Natural Resources.

**Matthew Naasz**, Gunderson, Palmer, Nelson, & Ashmore, appeared on behalf of the Applicant, Clean Nuclear Energy Corporation, Inc.

Intervenors present, online, or by telephone were Bruce Ellison, Dr. Lilias Jarding, Denise Giago, Taylor Gunhammer, Sarah Peterson, Caryn Lerman, Dr. Ben Sharp, Jeremiah Davis, Marla Cooley, Elizabeth Lone Eagle, Jean Roach, Helen Red Feather, Tonya Stands, Michael Melius, Brenda Gamache, Julie Plachta, Seth Eagle Bear, Jr., Rudel Bear Shirt, Mashanaposhe Camp, and Susan McPhail Pang.

Vice Chairman Greenfield stated that the board would determine whether to overturn the following specific rulings made by Hearing Chairman Morris: change of venue, the Fall River Ordinance declaring uranium mining a nuisance, applicant's motion in limine to preclude evidence regarding mining, translation services, electronic service, and other orders issued by the hearing chair at the request of the parties or the intervenors.

**Exhibits Admitted into the Record**

Exhibit A – May 14, 2025, letter to Minerals, Mining, and Superfund Program from Alyssa Comer, Chair, Oglala Lakota County Commission.

Exhibit B – Undated letter to Glenn Blumhardt, Chairman of the Board of Minerals and Environment, from Allyssa Comer, Oglala County Commission Chair, Art Hopkins, Commissioner, and Wendell Yellow Bull, Commissioner.

Exhibit C – October 15, 2025, letter to Minerals, Mining, and Superfund Program from Joe Falkenburg, Chair, Deb Russell, Vice Chair, Joe Allen, Les Cope, and Sandra Wahlert, Fall River County Commissioners.

Exhibit D – Undated letter to Glenn Blumhardt, Chairman of the Board of Minerals and Environment, from Joe Falkenburg, Chairman, Deborah Russell, Vice Chair, Joe Allen, Les Cope, and Sandra Wahlert, Fall River County Board of Commissioners.

Exhibit E – March 16, 2026, Letter to SD Board of Minerals and Environment from Robert Nelson, Mayor, City of Hot Springs.

Exhibit F – October 20, 2025, letter to the Board of Minerals and Environment from Robert Nelson, Mayor of Hot Springs.

Exhibit G – Copy of email from Aerial Allison, City of Hot Springs Administrator, which includes a January 20, 2026, letter to Glenn Blumhardt, Chair of the Board of Minerals and Environment from Robert Nelson, Mayor of Hot Springs.

Exhibit H – Copy of SDCL 45-6D-29.

Exhibit I – Copy of abstract of the votes cast in the jurisdiction of Fall River County on initiated measure: uranium mining is a nuisance in Fall River County.

### Change of Venue

The following presented statements in favor of a change of venue: Jay Davis, Dr. Ben Sharp, Robert Nelson (Mayor of Hot Springs), Bruce Ellison, Mashanaposhe Camp, Taylor Gunhammer, Wendall Yellow Bull, Alyssa Comer, Tonya Stands, Dr. Lilias Jarding, Helen Red Feather, Bud Lone Eagle (translator for Helen Red Feather), Jeane Roach, Caryn Lerman, Sarah Peterson.

Mr. Blair and Mr. Naasz requested keeping the hearing venue in Pierre.

Motion by Gruenwald, seconded by Haag, to move the hearing to Hot Springs. A roll call vote was taken, and the motion carried with Gruenwald, Haag, Karpen, Schultz, and Greenfield voting aye, and Ewing, Miller, and Blumhardt voting no. Morris abstained.

### Fall River County Ordinance

Motion by Miller, seconded by Ewing, to uphold Mr. Morris' ruling that the Fall River County Ordinance does not apply to the EXNI permit.

Substitute motion by Blumhardt, seconded by Gruenwald, to put the proceedings on hold until the board receives clarification from the courts as to the validity and the reach of the Fall River County Ordinance. A roll call vote was taken, and the motion failed with Gruenwald, Haag, and Blumhardt voting aye and Ewing, Karpen, Miller, Schultz, and Greenfield voting no. Morris abstained.

A roll call vote was taken on the original motion, and the motion carried with Ewing, Karpen, Miller, Schultz, and Greenfield voting aye and Gruenwald, Haag, and Blumhardt voting no. Morris abstained.

### Applicant's Motion in Limine to Preclude Evidence Regarding Mining

The following provided statements against Mr. Morris' ruling: Dr. Lilias Jarding, Dr. Ben Sharp, Bruce Ellison, Elizabeth Lone Eagle, and Jean Roach.

Steve Blair and Matt Naasz provided statements in favor of Mr. Morris' ruling.

Motion by Miller, seconded by Gruenwald, to overrule Mr. Morris' ruling on the applicant's motion in limine. A roll call vote was taken and the motion carried with Gruenwald, Haag, Karpen, Miller, Schultz, Blumhardt, and Greenfield voting aye and Ewing voting no. Morris abstained.

**Translation Services**

The following provided statements in favor of overruling Mr. Morris' ruling to not allow translation services: Bruce Ellison, Jean Roach, Tonya Stands, Helen Red Feather, Bud Lone Eagle translating for Ms. Red Feather, and Elizabeth Lone Eagle.

**Motion by Gruenwald, seconded by Miller, to overturn Mr. Morris' ruling and proceed as outlined in House Bill 1219, which was approved during the 2026 Legislature. A roll call vote was taken, and the motion carried with Ewing, Gruenwald, Haag, Karpen, Miller, Schultz, Blumhardt, and Greenfield voting aye. Morris abstained.**

**Electronic Service**

The following provided statements in favor of allowing electronic service: Elizabeth Lone Eagle, Bruce Ellison. Mr. Naasz and Mr. Blair both noted that the statute and rules do not allow for electronic service.

Motion by Ewing, seconded by Miller, to uphold Mr. Morris' ruling to not allow electronic service. A roll call vote was taken, and the motion carried with Ewing, Gruenwald, Haag, Karpen, Miller, Schultz, Blumhardt, and Greenfield voting aye. Morris abstained.

---

*Audio recording of this meeting is available on the South Dakota Boards and Commissions Portal at: http://boardsandcommissions.sd.gov/Meetings.aspx?BoardID=67*

*A transcript of the EXNI 453 proceedings may be obtained by contacting Carla Bachand, Capital Reporting Services, PO Box 903, Pierre SD 57501, pcbachand@pie.midco.net, or (605) 222-4235.*

STATE OF SOUTH DAKOTA
DEPARTMENT OF AGRICULTURE & NATURAL RESOURCES
BOARD OF MINERALS AND ENVIRONMENT

IN THE MATTER OF CLEAN NUCLEAR ENERGY CORP.
URANIUM EXPLORATION PERMIT APPLICATION
EXNI 453

## PROPOSED PROCEDURAL ORDER FOR LAKOTA LANGUAGE INTERPRETATION SERVICES

**COMES NOW** Intervenor **Elizabeth Lone Eagle**, on behalf of herself and other intervenors who require Lakota language interpretation services, and respectfully requests that the Board of Minerals & Environment provide adequate resources and time for such services in the above-captioned matter, including but not limited to:

1. **Spoken language interpretation** of motions, orders, exhibits, and other documents;

2. **English-to-Lakota translation** of in-person proceedings;

3. **Lakota-to-English translation** of intervenor examinations of witnesses; and

4. **Lakota-to-English translation** of any testimony provided by witnesses for whom Lakota is their primary language.

### 1. Necessity of Interpretation Services.
This matter involves proposed uranium exploration within treaty territory and in an area of immense historic and cultural importance to the Lakota people. It is expected that intervenors and witnesses will require the assistance of an interpreter to fully convey to the Board their knowledge, concerns, and understanding of the historical, cultural, and environmental significance of the affected lands. The historic and cultural value of these lands is expressly identified as a factor in the Board's decision-making process, making accurate and complete communication essential.

### 2. Financial Constraints of Intervenors.
Many intervenors who require Lakota language interpretation are elders, residents of rural or reservation areas, and individuals of limited means, often living on fixed incomes. Requiring them to bear the cost of interpretation services would effectively deny them the ability to meaningfully participate in this proceeding. Therefore, it is respectfully requested that the **State bear the cost of providing qualified interpretation services** for all phases of the hearing process, including pre-hearing conferences, evidentiary hearings, and review of written filings.

### 3. Due Process and Equal Access to Participation.

The undersigned has previously raised concerns about the denial of electronic service and its impact on timely notice to all parties, particularly those in rural and reservation communities. Those same due process concerns apply equally here: without the provision of timely and accurate interpretation services, intervenors who speak primarily Lakota will be unable to participate on equal footing with English-speaking parties. The Board's obligation to ensure a fair hearing process includes ensuring that all parties can understand and respond to the proceedings in a language they fully comprehend.

### 4. Qualified Interpreter List.

The undersigned and other intervenors are prepared to submit a list of qualified interpreters fluent in both Lakota and English, and available to assist the Board in fulfilling this request.

**WHEREFORE**, Intervenor respectfully requests that the Hearing Officer enter a procedural order requiring the State to provide, at its expense, Lakota language interpretation services as described above, for the benefit of intervenors and witnesses throughout all phases of this proceeding.

Dated this 15th day of August, 2025.

Respectfully submitted,

**/s/Elizabeth Lone Eagle**
c/o Tatanka Itancan Lone Eagle
202 Bald Eagle Lane, Box 11
Rapid City, SD 57701
Email: bridgeradvocate@gmail.com

3

STATE OF SOUTH DAKOTA
BOARD OF MINERALS AND ENVIRONMENT
IN THE MATTER OF THE APPLICATION OF CLEAN NUCLEAR ENERGY CORPORATION
FOR PERMITS TO CONDUCT IN-SITU RECOVERY URANIUM MINING IN FALL RIVER
COUNTY, SOUTH DAKOTA
EXN 1453

---

## INTERVENORS REQUESTING LAKOTA INTERPRETATION SERVICES AND PROPOSED INTERPRETERS

Pursuant to the instructions of **Pre-Hearing Officer Bob Morris** at the pre-hearing conference held on **August 21, 2025**, I respectfully submit the following list of intervenors in Application EXN 1453 who request Lakota interpretation services:

Darlene Hawk Wing

Helen Red Feather

Beverly Larson

Ruddell Bear Shirt

Seth Eagle Bear, Jr.

As stated in an earlier email, additional intervenors are bilingual and do not require the same level of interpretation services. However, they may need access to such services if they encounter language barriers during the course of these proceedings.

---

## Proposed Interpreters

### Phyllis Bald Eagle
E  baldeaglephyllis1@gmail.com
Phyllis is an enrolled member of the Cheyenne River Sioux Tribe and a first-language Lakota speaker. She serves as a Community Health Representative, working directly with elderly Lakota speakers. She previously collaborated with her father, Chief Dave Bald Eagle, on many issues concerning Lakota people. Phyllis brings extensive vocabulary in both Lakota and English, as well as diplomatic skills passed down from her father.

3

### Violet Catches

E catchesv@outlook.com

Violet is an enrolled member of the Cheyenne River Sioux Tribe and a first-language Lakota speaker. She holds a Master's degree in Linguistics from the University of Colorado, with expertise in Siouan languages. Violet is currently employed at the Pierre Indian Learning Center. Located in Pierre, she is readily available for services in that venue.

### Duane Two Bulls

E duanetwobulls@gmail.com

Duane is an enrolled member of the Oglala Sioux Tribe. As a young Lakota spiritual leader, he has been trained by elder mentors from an early age. He has worked with the Black Hills Clean Water Alliance and is familiar with the terminology associated with Application EXN 1453. He is prepared to provide translation and interpretation services as needed.

### Alex White Plume

E alexanderwhiteplume@yahoo.com

Alex is an elder of the Oglala Sioux Tribe whose first language is Lakota. He has developed significant expertise in translating legal terminology through his more than twenty-year effort to legalize the cultivation and sale of hemp within the boundaries of the Oglala Sioux Tribe.

---

### Rationale and Implementation

As first-language Lakota speakers, the above interpreters are uniquely qualified not only to translate between English and Lakota, but also to bridge the philosophical and cultural perspectives embodied in each language. This ensures thorough understanding for both Lakota-speaking intervenors and English-speaking counterparts.

**Geographic Accessibility**: Phyllis and Violet live in closer proximity to Pierre, while Duane and Alex reside within the Oglala Sioux Tribe's boundaries, making them accessible to first-language speakers there.

**Preparedness**: All four interpreters have confirmed their willingness and availability. They have received the link to the contested case website, and I have also shared with them the documents currently available.

**Division of Duties**: Given the volume of documents, interpreters will divide responsibilities for oral translation. Services will be provided via Zoom Workplace and in person as needed. They will also assist first-language speakers with translating responses from Lakota into English.

3

**Pre-Hearing and Hearing Services:** During future pre-hearing conferences and the eventual hearings, interpreters will provide real-time interpretation between English and Lakota with the support of available audio technology.

**Court Reporting:** I recommend that Violet Catches be assigned to work directly with the court reporter to ensure an accurate record of Lakota language testimony.

**Technology Support:** I recommend coordination with the South Dakota Department of Tribal Relations to explore real-time interpretation technology for use during hearings.

**Team Coverage:** I further recommend that all interpreters be present at the final hearings to share responsibilities and avoid interpreter fatigue.

---

### Next Steps

I respectfully request prompt collaboration with **Board Counsel David McVey** to develop a conservative budget and implementation plan for interpreter services to ensure meaningful participation by first-language Lakota speakers.

The first deadline set by Pre-Hearing Officer Morris is **September 30, 2025,** and timely arrangements are essential to guarantee due process and equal access for all intervenors.

---

**Respectfully submitted,**
/s/ Elizabeth Lone Eagle
Phone: 605-200-6800
Email: bridgeradvocate@gmail.com

**Filed via email to** Brenda.Binegar@state.sd.us **pursuant to the Hearing Officer's August 21, 2025 Order**

**From:** Bridger Advocate <bridgeradvocate@gmail.com>
**Sent:** Tuesday, August 26, 2025 12:19 PM
**To:** Binegar, Brenda <Brenda.Binegar@state.sd.us>; McVey, David <David.McVey@state.sd.us>
**Subject:** [EXT] Lakota Language Interpreter submission re: Application EXN 1453

Dear Ms. Binegar, and Mr. McVey;

Please find attached my submission pursuant to the instructions of Pre-Hearing Officer Bob Morris during the August 21, 2025 pre-hearing conference in Application EXN 1453.

Respectfully,
Elizabeth Lone Eagle

PS: Please acknowledge receipt of this email. I am aware the state is experiencing some technical difficulties.

STATE OF SOUTH DAKOTA
DEPARTMENT OF AGRICULTURE & NATURAL RESOURCES

BOARD OF MINERALS AND ENVIRONMENT

| | | |
|---|---|---|
| IN THE MATTER OF CLEAN NUCLEAR ENERGY CORP. URANIUM EXPLORATION PERMIT APPLICATION<br><br>EXNI 453 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ORDER ON MOTION REQUESTING LAKOTA LANGUAGE INTERPRETER SERVICES |

Before the Board is Elizabeth Lone Eagle's August 15, 2025, motion requesting that the board, *inter alia*, "enter a procedural order requiring the State to provide, at its expense, Lakota language interpretation services...for the benefit of intervenors and witnesses throughout all phases of this proceeding."

The instant matter is governed by S.D. Codified Laws ("SDCL") Rule 45-9-74, which applies SDCL 1-26 to the proceeding. SDCL Chapter 1-26 requires that in a contested case, parties be afforded an opportunity for hearing, the ability to appear in person or by counsel, or both, to be present during the giving of all evidence, to have reasonable opportunity to inspect all documentary evidence, to examine and cross-examine witnesses, to present evidence in support of the party's interest, and may request subpoenas be issued to compel attendance of witnesses and production of evidence in the party's behalf in a manner consistent with state law.

1

There is, however, no affirmative duty on the State to provide interpreter services at a contested case hearing within Chapter 1-26.

Additionally, "[p]arties to a contested case proceeding are entitled to due process of law." *Application of Farmers State Bank of Viborg*, 466 N.W.2d 158, 162 (S.D. 1991). A fundamental notion of procedural due process is that it "requires that before a person is deprived of a property right that person is entitled to notice and a meaningful opportunity to be heard." *Matter of Est. of Washburn*, 1998 S.D. 11, ¶ 18, 575 N.W.2d 245, 249-50. However, the procedural due process standard is "flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 321, 96 S. Ct. 893, 896, 47 L. Ed. 2d 18 (1976) (cleaned up) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484). Here the potential that the intervenors will be deprived of a property right is minimal. As such, sufficient procedural protections are afforded all intervenors under SDCL § 1-26 because it provides all intervenors a meaningful opportunity to be heard.

Accordingly, after considering the requirements of SDCL §1-26 and procedural due process rights of the intervenors, the motion is denied.

Dated this __10__ day of November 2025

**BOARD OF MINERALS & ENVIRONMENT**

_____
Bob Morris, Hearing Chair

2



# IN THE CIRCUIT COURT

**SEVENTH JUDICIAL CIRCUIT**
**FALL RIVER COUNTY, SOUTH DAKOTA**

---

**Elizabeth Lone Eagle; Helen Red Feather; Beverly Larson; Ruddell Bear Shirt; Seth Eagle Bear, Jr.; Cheryl Angel; and Darlene Hawk Wing,**
Plaintiffs,

v.

**South Dakota Board of Minerals and Environment; South Dakota Department of Agriculture and Natural Resources; Bob Morris, in his official capacity as Hearing Officer; and Clean Nuclear Energy Corp., as Real Party in Interest,**
Defendants.

Case No.: _____

---

# AFFIDAVIT OF ELIZABETH LONE EAGLE

I was informed that there was an application for a permit for exploratory drilling for uranium in the southern Black Hills near Craven Canyon. I decided to apply to be an intervenor against the permit. I was accepted.

Over the summer I became aware there are nearly 45 parties to the contested case, including several Lakota from the Rosebud, and Oglala Sioux Tribes, who, like me, live on the reservations where resources and access to resources are limited. Previous experience as an intervenor has taught me that getting to know other pro se intervenors can be helpful and a good source of support through the administrative process. I invited other Lakota intervenors, many of them first time intervenors, to a hybrid (Zoom and in person) meeting on August 9, 2025, in advance of the scheduled prehearing conference on August 21, 2025.

At the hybrid meeting I became aware that several intervenors from the Wounded Knee community, part of the Oglala Sioux Tribe, were in need of Lakota interpretation services, and had very limited access to resources, such as the ability to send mail, but are very adamant about their participation in the process. They are tired of being left out of decisions that affect them, their land, and water, and tired of being lied to by government agencies and corporations stealing their resources and destroying the environment they live in. I knew they needed help.



Prior to the prehearing conference, on August 15, 2025, I submitted a procedural motion (see attached motion) requesting Lakota interpretation services for the Lakota First Language Speakers, all of whom are elderly Tribal members.

At the prehearing conference on August 21, 2025, the Hearing Officer, Bob Morris, addressed my motion saying the "motion will be held in abeyance" until the "feasibility" could be determined. (see attached order) He then instructed me to meet with David McVey, the legal advisor for the Mineral Board, so we could discuss resources available to the state, develop a budget, and put together a plan as to what the services would look like. Mr. Morris also instructed me to submit a list of the intervenors that required interpretation services, and a list of potential interpreters, with their qualifications. I did that (see attached document) and included recommendations, rationale, and implementation that the state could easily follow. I left several messages for Mr. McVey to contact me so we could get to work right away, and there were upcoming deadlines, and we needed to make the most of it, to ensure the due process rights of the Lakota speakers were respected.

September 2, 2025, the one and only conversation I had with Mr. McVey did not feel promising. Mr. McVey's primary concerns were the cost, and the amount of time it would take to provide interpretation during the hearing ONLY. He did not seem concerned with the intervenor's ability to read and understand documents submitted in English, so they can fully participate in the process. My interpretation of Mr. McVey's demeanor during our one and only phone call is what I would characterize as "veiled resistance," as he offered only barriers to overcome, rather than thoughtful possibilities as potential solutions. My experience in trying to contact him since, as well as attempting to work through other state agencies (ie: the Department of Tribal Relations) to try to get interpretation services provided, has proven to me, my characterization of veiled resistance is correct.

Since my one and only conversation with Mr. McVey, another intervenor, Cheryl Angel, has also come forward seeking interpretation services. Considering the number of Lakota intervenors, many of whom are Lakota speakers, my guess is there will continue to be those who need services as the case progresses.

It has become obvious to me, Mr. McVey, Mr. Morris, and the SD state agencies involved intend to ignore the due process rights of the Lakota First Language Speakers, in the hopes that the problem will solve itself, most likely by the intervenors simply going away. This is not only NOT acceptable, it is also NOT likely to happen.

First Lakota intervenors were not able to submit their own Requests for Discovery, and will miss the deadline set in the Scheduling Order for Expert Witness lists, simply because there are language and access barriers so severe, they cannot be overcome without cooperation from the state. Since it all relates to Due Process Rights, it is imperative the State of South Dakota not only recognize the need, but actively, and PROactively work in cooperation with pro se intervenors to ensure Due Process Rights, which by the state's willful ignorance, and lack of effort, is completely failing.



It is my understanding that in administrative proceedings such as this, the state agency is supposed to be a "neutral party." However, by subversively refusing needed services and accommodations, otherwise required in legal settings, the State of South Dakota is making a clear display of preferential treatment in favor of the applicant, and in clear violation of the Due Process rights of all pro se intervenors.

I have submitted numerous motions for reconsideration of electronic filing, in addition to motions for scheduling, a protective order regarding filing deadlines, and an addendum to one of the motions. All motions are with consideration of Due Process Rights with respect to Lakota First Language speakers and lack of access to the resources required by the hearing officer. The most recent were submitted on October 2, 2025, with timeliness of a ruling being key. To date, my motions have either been denied, held in abeyance, or received no ruling whatsoever. It is apparent to me, Mr. Morris plans to not rule on anything further, until the next prehearing conference scheduled for January 6, 2025, at which time, it will be too late.

**Respectfully Submitted**
Dated this _____ day of October, 2025.

**Elizabeth Lone Eagle**
c/o Lakota Prairie Ranch
P.O. Box 656
Kyle, SD 57752

---

**STATE OF SOUTH DAKOTA )**

**: ss.**

**COUNTY OF FALL RIVER )**

On this _____ day of October, 2025, before me, the undersigned officer, personally appeared **Elizabeth Lone Eagle**, known to me or satisfactorily proven to be the person whose name is subscribed to this instrument, and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

---

**Notary Public – South Dakota**
My Commission Expires: _____

# STATE OF SOUTH DAKOTA

**DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES
MINING AND MINERALS BOARD**

**In the Matter of:
Clean Nuclear Energy Corp. Uranium Exploration Permit Application
Application EXNI 453**

**Intervenor:** Elizabeth Lone Eagle

**Subject:** Appeal of Hearing Officer Denial of Motion for Lakota Language Interpretation Services

# APPEAL TO THE SOUTH DAKOTA MINING AND MINERALS BOARD

## I. Introduction

Intervenor Elizabeth Lone Eagle respectfully appeals the **November 10, 2025**, Hearing Officer's denial of her motion requesting that the Board **enter a procedural order requiring the State to provide, at its expense, Lakota language interpretation services** for the benefit of intervenors and witnesses throughout all phases of this proceeding.

This appeal asserts that the denial violates procedural due process rights, statutory protections under SDCL Chapter 1-26, and relevant federal and state legal authority concerning meaningful participation in contested administrative proceedings.

## II. Factual Background

1.  On August 15, 2025, Intervenor Elizabeth Lone Eagle filed a motion requesting **Lakota language interpreter services** to ensure meaningful participation by Lakota-speaking intervenors and witnesses.

2. The Hearing Officer originally held the motion in abeyance and subsequently **ignored all additional pleadings** submitted by Intervenor regarding the motion. It was only after Intervenor submitted an appeal to the South Dakota Secretary of the Department of Environment and Natural Resources (DANR) that any substantive action was taken. The Hearing Officer's subsequent decisions regarding all of Intervenor's motions, including this written denial, **appear to be retaliatory rather than fully grounded in law**, creating the appearance of **bias in favor of the applicant** and contrary to the statutory requirement of neutrality in his decisions.

3. The Hearing Officer denied the motion **on November 10, 2025**, reasoning that SDCL § 1-26 procedural protections already provide sufficient opportunity to participate, and that no affirmative duty exists under state law to provide interpreter services.

4. Intervenor contends that without interpreter services, the statutory rights to cross-examine, present evidence, and meaningfully participate are illusory due to linguistic barriers.

Relevant filings and motions in this proceeding are publicly available on the South Dakota Department of Environment and Natural Resources (DANR) website for application **EXNI 453**: https://danr.sd.gov/Environment/MineralsMining/Exploration/docs/111325CNECNOEOrder.pdf

---

# III. Legal Basis for Appeal

## A. Procedural Due Process Requires Meaningful Participation — Not Just Physical Presence

### 1. Meaningful access is required under procedural due process.

Procedural due process guarantees that an individual facing deprivation of a property interest must receive notice *and a meaningful opportunity to be heard*, including the ability to understand the proceeding sufficiently to participate. **Goldberg v. Kelly** recognized that process must include the ability to understand and respond to evidence, not merely the right to attend.

Even though SDCL § 1-26-18 outlines procedural rights such as cross-examination and evidence presentations, those rights are **illusory if participants cannot understand the proceeding due to language barriers**. An interpreter is essential to ensure *meaningful participation*, not mere physical attendance.

### 2. Due process case law supports the right to meaningful presence.

Although the U.S. Supreme Court has not squarely held that interpreters are constitutionally required in administrative hearings, many courts and Title VI interpretations hold that meaningful participation includes language access. Federal interpretation of equal protection and Title VI of

the Civil Rights Act (prohibiting national-origin discrimination) requires meaningful access for Limited English Proficient (LEP) individuals in court and hearing proceedings.

### 3. Administrative fairness requires comprehension.

Decisions such as *Yamataya v. Fisher* establish that administrative hearings are not immune from constitutional scrutiny: an administrative hearing that deprives an individual of rights must be fair, and fairness includes access to understanding the proceeding.

---

## B. State Court Interpreter Requirements Provide a Persuasive Analogy

### 1. SD Unified Judicial System Language Access Plans

South Dakota's state courts have formal **Language Access Plans** and policies recognizing that LEP individuals and persons with hearing impairments must be provided interpreters to *meaningfully access justice.*

### 2. Statutory Interpreter Appointment in Civil Proceedings

Under SD statutes **15-17-37.1**, when a party or witness needs a language interpreter in state court civil actions or special proceedings, **the court must procure and appoint a disinterested interpreter** and compensate them.

This statutory right to interpreter services for civil and special proceedings reflects a legislative judgment that meaningful participation requires language access — even outside criminal cases. The analogy supports an interpretation that *administrative contested cases — particularly those affecting property or regulatory rights — should not be treated as a lower due process category.*

### 3. Interpreters are provided without cost in court to ensure meaningful access.

Interpreter services are provided at no cost to those who require them because their absence impairs due process and fair access.

---

## C. Federal Law and Civil Rights Supports Language Access

### 1. Title VI of the Civil Rights Act

Title VI prohibits discrimination based on national origin by recipients of federal funds. Courts have interpreted Title VI to require language access when failure to provide it effectively discriminates against LEP individuals. Though state administrative hearings are not identical to



court proceedings, they often involve federally funded programs or regulations subject to federal funding conditions, implicating Title VI obligations in contested administrative cases.

**2. Federal court practice recognizes meaningful access.**

Federal courts and administrative agencies recognize that meaningful access requires interpreters where participants cannot understand the proceedings, even if certification for every language is not uniformly available. This reflects the principle that justice systems must provide language access when comprehension barriers would undermine the fairness of the proceeding.

## D. Analogous State Legislative Developments Reinforce the Need for Interpreter Services

Both legislative drafting and policy discussions in South Dakota reflect that interpreter services in administrative contested cases are not yet statutorily mandated but **have been identified as a necessary tool for due process and fair participation**. Pending legislation aims to require interpreter services in contested administrative hearings, underscoring legislative recognition that language access is integral to fairness.

## E. Constitutional Principles of Equal Protection and Access to Justice

Due process requires more than mere procedural rights on paper — it demands *meaningful implementation.* Denying interpreter services when needed creates a de facto barrier to participation and segregates Lakota-speaking participants into a class lacking meaningful access to the proceeding.

# IV. Relief Requested

Intervenor respectfully requests that the South Dakota Mining and Minerals Board:

1. **Reverse the Hearing Officer's denial** of the August 15, 2025, motion **issued on November 10, 2025.**
2. **Enter a procedural order** directing the State to provide, at its expense, qualified **Lakota language interpreter services** for the benefit of intervenors and witnesses throughout all phases of this proceeding.
3. Ensure that all future hearing notices, prehearing conferences, and testimony are **fully accessible** to Lakota-speaking participants.

# V. Conclusion

Denial of interpreter services in this contested case deprives Lakota-speaking intervenors of **meaningful participation**, contrary to **SDCL § 1-26, federal due process principles, Title VI obligations**, and the **State's own language access policies in state court proceedings**. To uphold procedural fairness and constitutional due process, the Board should grant this appeal and order interpreter services.

**Respectfully submitted,**

Elizabeth Lone Eagle
Intervenor

**Dated:** January 19, 2026

## STATE OF SOUTH DAKOTA

## BOARD OF MINERALS AND ENVIRONMENT

In the Matter of the Application of Clean Nuclear Energy Corp. for a Permit to Conduct Uranium Exploration Drilling in Fall River County, South Dakota

## EXNI 453

## INTERVENOR'S MOTION TO RECONSIDER AND MODIFY SCHEDULING ORDER

COMES NOW, Intervenor Elizabeth Lone Eagle, appearing pro se, and respectfully moves the Hearing Officer to reconsider and modify the Scheduling Order dated September 2, 2025, in order to ensure that all intervenors are afforded full due process protections in these proceedings.

### I. BACKGROUND

On September 2, 2025, the Hearing Officer issued a Scheduling Order establishing deadlines for discovery, witness lists, expert disclosures, motions, and related filings. These deadlines assume equal access to resources and services across all parties.

However, several unique factors affect the ability of pro se intervenors—particularly those residing in rural and reservation communities, as well as First-Language Lakota speakers—to comply with the existing schedule:

- The volume of paperwork required in this case is substantial, with multiple parties, overlapping discovery requests, and responses.
- Service restrictions to USPS and fax create unavoidable delays in receipt and response, as described in Intervenor's Motion for Protective Order.
- Language access requirements for First-Language Lakota speakers necessitate additional time for oral and written translation to ensure equal understanding and participation.

Without accommodations, the current schedule creates an undue burden and risks depriving intervenors of their rights to meaningful participation.

### II. GROUNDS FOR RELIEF

1. Paperwork Volume and Complexity
   The number of intervenors and the breadth of the issues raised guarantee a high volume of discovery and filings. Without adequate time, parties cannot meaningfully participate.

2. Service Limitations

As detailed in the Motion for Protective Order, mail delays and limited USPS access impede the timely exchange of documents, further compressing the schedule.

3. Language Access for First-Language Lakota Speakers

Interpretation requires both translation of written documents and real-time interpretation of proceedings. This essential process extends preparation time and must be built into the schedule.

## III. RELIEF REQUESTED

Intervenor respectfully requests that the Hearing Officer modify the Scheduling Order to provide the following adjustments:

1. That discovery deadlines be extended to thirty (30) days, provided that adequate and timely interpretation services are made available to First-Language Lakota speakers.

2. That responsive filings and motions deadlines be extended to twenty-one (21) days, to account for both interpretation and service realities.

3. That all deadlines in the Scheduling Order reflect the requirements of due process and equal participation, recognizing the unique barriers faced by intervenors in rural and reservation communities.

4. That where interpretation delays occur, the Hearing Officer grant automatic extensions to ensure that First-Language speakers are not disadvantaged.

## IV. CONCLUSION

The September 2, 2025 Scheduling Order does not adequately reflect the realities of pro se intervenors' circumstances, nor does it provide sufficient accommodations for First-Language Lakota speakers. Modifying the deadlines to thirty (30) days for discovery and twenty-one (21) days for filings, with additional accommodations for interpretation delays, will better balance the goals of timeliness and fairness while protecting the due process rights of all parties.

Respectfully submitted,

/s/ Elizabeth Lone Eagle

Phone: 605-200-6800

Email: bridgeradvocate@gmail.com

Filed via email to Brenda.Binegar@state.sd.us pursuant to the Hearing Officer's August 5, 2025 Order.

## STATE OF SOUTH DAKOTA

## BOARD OF MINERALS AND ENVIRONMENT

In the Matter of the Application of Clean Nuclear Energy Corp. for a Permit to Conduct Uranium Exploration Drilling in Fall River County, South Dakota

## EXNI 453

## INTERVENOR'S MOTION FOR PROTECTIVE ORDER ON SERVICE AND DEADLINES

COMES NOW, Intervenor Elizabeth Lone Eagle, appearing pro se, and respectfully requests that the Hearing Officer issue a Protective Order to safeguard the due process rights of intervenors in light of service restrictions and delays.

## I. BACKGROUND

On August 5, 2025, Hearing Officer Bob Morris ordered that service of documents in this proceeding be made exclusively by United States Postal Service (USPS) or fax. During the August 21, 2025 prehearing conference, the Hearing Officer reaffirmed this requirement, denying requests for electronic service.

Subsequently, on September 2, 2025, the Hearing Officer issued a Scheduling Order setting deadlines for discovery, witness lists, and other filings. These deadlines are tied, in part, to service of documents.

As a result, intervenors who reside in rural and reservation communities face unique obstacles. Within the Pine Ridge and Cheyenne River Reservations, there are no fully staffed, fully resourced USPS facilities with the necessary capacity to process filings in compliance with the Hearing Officer's order. Facilities within reservation boundaries often operate with limited hours of service, reducing access even further.

Intervenors must therefore travel significant distances—often more than an hour to Rapid City, South Dakota—to access USPS sites that are fully equipped to handle filing requirements. These travel and access limitations, coupled with inherent mail delays, have already caused pro se intervenors' filings to fall behind ordered deadlines despite diligent preparation.

## II. GROUNDS FOR RELIEF

The restriction to USPS or fax service disproportionately impacts pro se intervenors, particularly First-Language Lakota speakers and others in rural areas, who are entitled to

meaningful and timely participation in these proceedings. Without protective measures, the Scheduling Order unfairly penalizes parties for circumstances beyond their control, including:

- Mail transit delays that make timely compliance impossible.
- Lack of fully staffed, fully resourced USPS facilities within reservation boundaries.
- Limited hours of operation in rural and reservation USPS locations, preventing timely access.

These barriers threaten fundamental due process rights.

### III. RELIEF REQUESTED

Intervenor respectfully requests that the Hearing Officer enter a Protective Order providing that:

1. Where applicable in the Scheduling Order, deadlines shall run from the date of actual receipt of service rather than the date of postmark. This ensures that intervenors served by mail are not prejudiced by postal delays beyond their control.

2. Deadlines shall be automatically extended where access to USPS services is limited, including but not limited to lack of access to fully staffed, fully resourced USPS facilities, or facilities with limited hours of operation within reservation boundaries and other rural areas.

3. This Protective Order shall be retroactive to the discovery filing deadline of September 30, 2025, as established by the Hearing Officer's September 2, 2025 Scheduling Order, ensuring that no intervenor is prejudiced by mail delays or lack of USPS access that have already occurred.

### IV. CONCLUSION

Without a protective order, intervenors' rights are compromised by systemic barriers to timely service and filing. By ensuring that deadlines reflect actual receipt, access realities, and retroactive relief back to the September 30, 2025 discovery deadline, the Hearing Officer can uphold the fairness and due process required in these proceedings.

Respectfully submitted,

/s/ Elizabeth Lone Eagle

Phone: 605-200-6800

Email: bridgeradvocate@gmail.com

Filed via email to Brenda.Binegar@state.sd.us pursuant to the Hearing Officer's August 5, 2025 Order.

*10*

## STATE OF SOUTH DAKOTA

## BOARD OF MINERALS AND ENVIRONMENT

In the Matter of the Application of Clean Nuclear Energy Corp. for a Permit to Conduct Uranium Exploration Drilling in Fall River County, South Dakota

### EXNI 453

## ADDENDUM TO INTERVENOR'S MOTION FOR RECONSIDERATION OF ELECTRONIC SERVICE

COMES NOW, Intervenor Elizabeth Lone Eagle, appearing pro se, and respectfully submits this Addendum to her Motion for Reconsideration of Electronic Service, filed October 1, 2025, to provide additional evidence and considerations in support of the relief requested.

### I. ADDITIONAL EVIDENCE

Recent evidence further illustrates the systemic failures of USPS service in South Dakota. On September 18, 2025, U.S. Senator Mike Rounds publicly pressed Postmaster General David Steiner to restore reliable mail service in South Dakota, citing widespread delays that have harmed veterans, delayed medications, and disrupted timely communications. Senator Rounds noted that letters and newspapers mailed within the state are routinely taking weeks to arrive, and he concluded his letter with the statement: "P.S. I am emailing this to you because if I mailed it, you might not receive this letter in time." These official statements and constituent reports confirm that intervenors' concerns about delayed service are not isolated incidents, but part of a broader systemic failure in South Dakota's mail system. Reliance on USPS-only service in these proceedings, therefore, unavoidably deprives intervenors of timely notice and obstructs their due process rights.

### II. RELIEF REQUESTED

Intervenor respectfully requests that the Hearing Officer consider this additional evidence in support of her original Motion for Reconsideration of Electronic Service. For the reasons stated herein and in the original motion, electronic service should be allowed for any party who affirmatively requests it, while retaining USPS service for those unable to access electronic methods.

Respectfully submitted,

/s/ Elizabeth Lone Eagle

Phone: 605-200-6800

# MOTION FOR EXPEDITED ADMINISTRATIVE REVIEW AND RELIEF FROM DUE PROCESS VIOLATIONS

**To:**
Hunter Roberts, Secretary
South Dakota Department of Agriculture and Natural Resources
523 E Capitol Ave
Pierre, SD 57501

**Re:** Request for Expedited Review and Relief from Due Process Violations in Contested Case EXNI 453

---

## I. PURPOSE OF MOTION

Comes now **Elizabeth Lone Eagle**, appearing pro se, on behalf of herself and other pro se intervenors who are First-Language Lakota speakers participating in the contested case concerning *Clean Nuclear Energy Corp.* uranium exploration permit application **EXNI 453**, and respectfully moves for an expedited administrative review and corrective action by the **South Dakota Department of Agriculture and Natural Resources** and the **Board of Minerals and Environment**.

This motion seeks an order directing the Board to convene a hearing to address the following issues and remedy the ongoing due process violations:

1. The Hearing Officer's denial of electronic service;

2. The continued failure to act on the motion for Lakota interpreter services, which has been held in abeyance;

3. The failure of Board Counsel David McVey to comply with the Hearing Officer's instruction to work with me to develop a budget and plan for interpreter services, including access to necessary state budget information and other resources; and

4. The need to review and adjust the **September 2, 2025** Scheduling Order to ensure procedural fairness, meaningful participation, and compliance with due process requirements.

## II. BACKGROUND

Multiple motions and communications have been submitted by the undersigned requesting interpreter services for First-Language Lakota speakers and the option for electronic service for all parties. Despite the Hearing Officer's acknowledgment that these matters must be addressed, electronic service has been denied, and the motion for interpreter services remains held in abeyance.

The Hearing Officer further directed Mr. McVey, acting as legal counsel for the Board, to work collaboratively with me to prepare a plan and budget for interpreter services. Mr. McVey has failed to do so, and has not provided the information or cooperation necessary to fulfill the Hearing Officer's instruction.

Meanwhile, procedural deadlines contained in the **Scheduling Order of September 2, 2025**—including the **October 14, 2025** deadline for expert witness disclosure—remain active, despite the continued exclusion of First-Language Lakota participants from equitable access to the process.

## III. LEGAL AUTHORITY

This motion is grounded in the following authorities:

- **SDCL 45-6B-11** – authorizes the Board of Minerals and Environment to conduct hearings and issue orders related to permit applications.

- **SDCL 45-6B-33** – empowers the Board to adopt administrative rules ensuring fair and impartial hearings.

- **SDCL 1-26-18** – guarantees all parties in contested administrative cases the right to present evidence and argument on every issue of fact and law.

- **ARSD 74:09:01:04** – authorizes the Hearing Examiner or Board Chair to manage proceedings and rule on motions consistent with fairness and due process.

- **ARSD 74:09:01:09** – grants the Board authority to review or modify decisions or procedures to ensure fairness and compliance with due process.

- **ARSD 74:09:01:10** – allows the Board or Hearing Examiner to grant continuances or modify schedules when necessary to protect due process.

- **Fourteenth Amendment, U.S. Constitution**, and **S.D. Const. art. VI, § 2** – guarantee due process and equal protection under the law in all governmental proceedings, including administrative.

- **Precedents from the Public Utilities Commission and the Water Board** demonstrate that electronic service and remote access are established and workable mechanisms within South Dakota administrative practice.

## IV. ARGUMENT

### A. Ongoing Irreparable Harm
The denial of electronic service and the failure to act on interpreter services have deprived First-Language Lakota speakers of meaningful participation in this proceeding. Each procedural deadline that continues under these conditions further compounds the deprivation of due process rights.

### B. Failure to Follow the Hearing Officer's Instructions
The Hearing Officer expressly instructed Mr. McVey and me to work together to prepare a plan and budget for interpreter services. That directive has not been carried out. Without access to state budget information and collaboration from Board Counsel, it is impossible to provide the Hearing Officer with the information he needs to make a ruling.

The refusal or failure of Mr. McVey to cooperate effectively nullifies the Hearing Officer's instruction and perpetuates inequity in the process.

### C. Lack of Adequate Administrative Remedy
Neither the Department nor the Board has established any written mechanism within **ARSD ch. 74:09** to address these due process deficiencies. Consequently, affected parties have no effective remedy within the administrative process itself.

### D. Board's Authority to Intervene
Under **ARSD 74:09:01:09** and **74:09:01:10**, the Board of Minerals and Environment possesses full authority to review, correct, or modify hearing procedures to ensure fairness and compliance with due process. A Board-level hearing is therefore necessary to resolve these procedural failures and restore equity to the process.

## V. REQUESTED RELIEF

The undersigned respectfully requests that the **Secretary of the DANR**:

1. Accept this motion for expedited administrative review;

2. Refer this matter to the **Board of Minerals and Environment** for a formal hearing to consider the due process violations described herein;

3. That the Board compel Board Counsel **David McVey** to work collaboratively with me to develop the budget and implementation plan for interpreter services as originally instructed by the Hearing Officer, to also include providing access to necessary information;

4. Overrule the Hearing Officer's denial of electronic service and authorize combined electronic and postal service for willing parties; and

5. Suspend or adjust all deadlines under the **September 2, 2025 Scheduling Order** until these due process concerns are resolved and the Board has completed its review.

---

**Respectfully Submitted,**

**Elizabeth Lone Eagle**
c/o Lakota Prairie Ranch
P.O. Box 656
Kyle, SD 57752

*12*

STATE OF SOUTH DAKOTA
DEPARTMENT OF AGRICULTURE & NATURAL RESOURCES

BOARD OF MINERALS AND ENVIRONMENT

| | |
|---|---|
| IN THE MATTER OF CLEAN NUCLEAR ENERGY CORP. URANIUM EXPLORATION PERMIT APPLICATION<br><br>EXNI 453 | ORDER ON PRE-HEARING MOTIONS AND PROCEDURAL & SCHEDULING ORDER |

On August 21, 2025 a pre-hearing conference was held on this matter to resolve pre-hearing motions and to set a procedural and scheduling order. After approximately three hours of discussion and upon consideration of the Hearing Chair, the motions and requests for orders are resolved as set forth herein.

It is hereby **ordered:**

## I.    PENDING MOTIONS

1. All motions for a pre-hearing conference are denied as moot.

2. All motions and requests regarding the location of the hearing are denied. The hearing will be held in Pierre, South Dakota at a date and time to be set by the Hearing Chair.

3. On August 15, 2025, Elizabeth Lone Eagle filed a motion requesting "that the Hearing Officer enter a procedural order requiring the State to provide, at its expense, Lakota language interpretation services as [described therein] for the benefit of intervenors and witnesses throughout all phases of this proceeding." This motion will be held in

1

*12*

abeyance until such time as the scope of the services needed, the proposed procedures to be followed at hearing, and the availability and feasibility of such services is determined.

4. Various motions were filed requesting that service by electronic means including e-mail be allowed. This request contravenes ARSD 74:09:01:07 which states:

> "The original of any petition, motion, or other pleading shall be filed with the secretary of the department. Filing of the pleadings or documents shall be effectuated by delivery in person, by facsimile, by mail, or by courier to the department by the date the pleadings or documents are due. The person filing the pleading shall serve copies of the documents or pleadings on the chair of the hearing, the hearing examiner if applicable, and all parties of record."

The requests are therefore denied. Nevertheless, in the interest of ensuring everyone has access to all motions, pleadings, etc., all motions etc. should be emailed to the Board Secretary at brenda.binegar@state.sd.us who will then make arrangements to post them on the Department of Agriculture and Natural Resources (DANR) Contested case website which can be found at: https://danr.sd.gov/public/ContestedCase.aspx. All filings MUST still be served in a manner set forth in ARSD 74:09:01:15 which states: "The service of all pleadings, notices, or orders may be made by first class mail, personal service, or facsimile. An affidavit of mailing, an admission of service, or other competent evidence is proof of service."

DANR will post a list of the intervenors and their addresses on the contested case website.

2

*12*

5. In advance of the pre-hearing conference, the parties were directed to brief the regarding the issue of the Fall River County Ordinance passed by voters in November of 2022 designating uranium mining as an unlawful nuisance in within the county.

This issue is deferred, and the parties are directed to further brief the issue to include the following points:

A. Whether the County Initiative Petition for a proposed ordinance in the form of URANIUM MINING IS A NUISANCE IN FALL RIVER COUNTY passed by majority vote of the Fall River voters, in the November 8, 2022 General Election is an enforceable County Ordinance without further action by the Fall River County Commission. In other words, is the Initiated Ordinance valid when voted on by the people or only when it is published as an official ordinance?

B. If the Ordinance is valid, is it applicable considering that this application is for an exploration permit not a mining permit.

C. If the Ordinance is valid and applicable, does Board/Hearing Chair have jurisdiction to decide whether the Ordinance is preempted by state law?

D. If the Ordinance is valid, applicable, and binding, what are the consequences relating to the instant application.

All briefs relating to the foregoing must be filed no later than 5:00 P.M. CDT on **October 1, 2025**.

3

## II.    PROCEDURAL AND SCHEDULING ORDER

1.    Discovery in this matter is limited to the scope of factors set forth in SDCL § 45- 6D-29. Discovery is further limited to the rule of proportionality, *i.e.*, excessive demands will not be allowed.

2.    Discovery requests, including Notices of Deposition, must be initiated (served upon the applicable party) no later than **September 30, 2025**. Discovery requests must be served upon all parties including a copy to the Board Secretary at brenda.binegar@state.sd.us who will arrange for posting the documents on the contested case website at the web address set forth *supra*.

3.    Each party must disclose in writing no later than **October 14, 2025**, the names of the expert witnesses it intends to call as a witness at the contested case hearing held in this matter. Each party must include in the submission copies of any curricula vitae as well as copies of any expert report prepared by the expert witness.

4.    All motions to compel compliance with discovery demands must be filed no later than **November 10, 2025**.

5.    Discovery must be completed by **November 17, 2025.**

6.    All motions, together with supporting briefs, must be filed and served upon all parties no later than **December 1, 2025**.

4

12

Any responding party shall have until **December 15, 2025**, to serve any responsive brief. Rebuttal briefs will be allowed only if requested by the Hearing Chair.

7.    Each party must disclose in writing no later than **December 1, 2025**, the name and address of each witness the party intends to call during the hearing of this matter.

8.    Each party must provide to all other parties, no later than **December 1, 2025**, a list identifying all exhibits the party intends to offer as evidence in its case in chief. Copies of said exhibits must also be provided; the copies may be provided by electronic means. Exhibit numbers are assigned as follows:

   A. 0-100 Department of Agriculture and Natural Resources

   B. 101-200 Applicant

   C. 201-300 Great Plains Tribal Water Alliance, Inc.

   D. 301-400 Cheyenne River Sioux Tribe

   E. 401-500 Oglala Sioux Tribe

   F. 501 – 600 Sierra Club

   G. For all others including individual intervenors, use your last name plus exhibit number starting at 1. For example: Smith 1, Smith 2, and so on.

9.    Stipulations may be made at any time and filed with the Board, with service upon all parties and the Hearing Chair.



10.     A prehearing conference will be scheduled for **January 6, 2026** to consider any remaining motions filed, to resolve any other item or issue, and to set a final hearing date and time. The parties may appear telephonically or by means of remote video. It is requested and recommended that all counsel appear personally.

11.     Each party must mark, in advance of the hearing, all exhibits the party intends to introduce at the hearing.

12.     It is anticipated that the hearing of this matter will require 3-4 days. A majority of the Board will be present at the hearing.

13.     This scheduling order may only be modified by subsequent Order of the Hearing Chair upon written motion and a showing of good cause.

Dated this 28th day of August, 2025

**BOARD OF MINERALS & ENVIRONMENT**

_____
Bob Morris, Hearing Chair

6

*13*

April 23, 2026

Mr. Mike Lees
Minerals, Mining, and Superfund
Program Administrator
South Dakota Department of Agriculture and Natural Resources
523 E. Capitol Ave., Pierre, SD 57501

RE: Interpretation Services for EXNI 453 Hearing, May 18-22, 2026

Dear Mr. Lees:

Considering the point we are at, I feel that a more formal response is warranted.

Before addressing the substance of your April 20 proposal, it is important to acknowledge something that the record of this proceeding makes impossible to overlook: interpretation services for the Lakota-speaking intervenors in this matter were first requested in August 2025. We are now in April 2026 — eight months later — and we are arranging these services under a crushing time constraint that covers only the hearing itself. Not the hundreds of documents now posted on the Board's website regarding EXNI 453. Not the application itself. None of the materials that Lakota-speaking intervenors were entitled to understand from the beginning of this proceeding have been translated.

This situation exists because Hearing Officer Bob Morris, Board Counsel David McVey, and the Board itself chose to contest the legal basis for interpretation services rather than provide them — despite the Fourteenth Amendment due process arguments placed before them, and despite the body of legal authority cited in support of those arguments. The response from the Board was, in effect, a challenge to change the law. That challenge was met. HB 1219 — Helen's Law — was signed on March 9, 2026, and takes effect July 1, 2026. The law exists because the Board declined to do what the Constitution already required. Had Mr. Morris and Mr. McVey simply done the right thing — legally and morally — in August 2025, these services would have been arranged months ago, at a pace that allowed for proper preparation, technology setup, document translation, and fair compensation negotiation. Instead, we are here.

I am actively working to convene the proposed interpreters for a consensus discussion on the terms being offered. That meeting has been challenging to schedule given the limited timeframe. This letter reflects my own preliminary assessment of the concerns that have emerged from conversations with the interpreters. Their individual responses and any agreed position will follow as promptly as possible.

**The Rate Comparison Is Not Appropriate for This Context**

That history is the context in which the interpreters' willingness to engage at all should be understood. The proposed interpreters are fluent first-language Lakota speakers, some with advanced academic credentials in linguistics, with decades of teaching and translation

experience, and with community standing that makes them trusted voices among the intervenors they would be serving. They understand the critical and historic nature of this proceeding for South Dakota, for the Lakota-speaking community, and for the future of administrative due process in this state. It is because of that understanding — not because the compensation offered reflects the value of their expertise — that they are willing to work within the fiscal limitations the state has expressed for this specific matter.

That willingness should not be mistaken for an acknowledgment that the rate offered is appropriate. The interpreters typically performing services at the $40-$60 per hour range cited in your April 20 email are working in languages with large pools of certified practitioners, established professional infrastructure, and decades of developed legal vocabulary. Lakota is not one of those languages. **Lakota is a critically endangered language.** The number of fluent first-language speakers capable of providing sustained, accurate interpretation in a complex legal and technical proceeding is extremely small. The EXNI 453 hearing will involve uranium geology terminology, regulatory and statutory language, scientific testimony regarding hydrology and aquifer systems, and cultural resource analysis — much of which does not exist in Lakota and will need to be coined collaboratively and in real time. That is work of a fundamentally different character and difficulty.

For this particular case, the added component of developing new vocabulary is a positive factor in proliferating Lakota and other endangered Indigenous languages in the State of South Dakota.  Something the DANR and by association, the Minerals and Mining Board, should be supporting, rather than stifling. The EXNI 453 contested case is an opportunity that provides unique access to individual experts willing and able to continue to enrich South Dakota, as well as continue to rebuild bridges and strengthen relationships with the Tribes.

It is also worth noting that the state will be calling expert witnesses in this same proceeding — geologists, archaeologists, engineers — who will be compensated at rates exceeding what is being offered to the Lakota interpreters, despite the fact that those experts face no comparable linguistic or cultural barriers in their work and operate in fields with well-established credentialing infrastructure. Your initial inquiry to the interpreters specifically requested their credentials. The credentials they possess — fluency from birth **in a critically endangered language**, advanced academic degrees, decades of teaching and translation experience, and the trust of the community they serve — are qualifications that are by any objective measure at least as specialized, and considerably more rare, than those of the expert witnesses the state compensates at a much higher rate. The interpreters are, in effect, offering the state a substantial discount in the interest of ensuring this proceeding can move forward. That gift deserves to be recognized as such.

## At Ten Hours Per Day, the Tag Team Proposal Is Not Tenable

Your March 20 inquiry specified that interpretation services would be needed for approximately ten hours per day for all five days of the hearing. Your April 20 response proposed a tag team arrangement in which two individuals would each be responsible for and paid for only half of the hearing hours each day.



At ten hours per day, the tag team proposal does not address a daunting task for one person. It proposes an impossible one. No single interpreter should be expected to sustain accurate, culturally appropriate, technically complex legal interpretation for ten consecutive hours, or even five. The cognitive and linguistic demands of sustained legal interpretation are exhausting under any circumstances. In a language as grammatically and culturally intricate as Lakota, and in a proceeding covering the technical subject matter at issue here, the demands are even greater. Interpreter fatigue directly compromises accuracy, and compromised accuracy in this proceeding directly compromises the intervenors' due process rights.

Beyond endurance, the team approach is not a preference — it is a structural necessity specific to the Lakota language and to the unprecedented nature of this proceeding. EXNI 453 involves subject matter — uranium exploration geology, aquifer science, cultural resource law, administrative procedure — for which no established Lakota vocabulary exists. The interpretation team will be creating new Lakota terminology in real time, as testimony unfolds. This is not a task that can be divided and handed off. Every interpreter must be present and actively engaged — taking notes, tracking the vocabulary being coined, and maintaining continuity of interpretation — for the entirety of the hearing, whether or not they are the one actively speaking at any given moment. An interpreter arriving mid-day to relieve a colleague would have no basis for the terminological decisions made in the morning session. The integrity of the interpretation depends on the full team being present throughout; especially since there has been exactly zero preparation time allowed.

This proceeding is groundbreaking for South Dakota. The Lakota vocabulary developed in this hearing will constitute a precedent for future administrative and legal proceedings involving Lakota-speaking participants, as well as many of the other 125 languages spoken in South Dakota; several of which have similar translation factors and complications as Lakota. That work cannot be done piecemeal. This endeavor will offer a framework, a process that can be used and adapted for other complex language translations in the future.

Lakota grammar also incorporates gender-based terminology. Accurate interpretation of testimony by and to speakers of different genders requires a gender-balanced team. The interpreters have identified a structure of two male and two female interpreters working in coordinated shifts as the appropriate configuration — not as a matter of comfort, but as a matter of linguistic accuracy that cannot be achieved by a two-person arrangement.

This brings us to the technology question, and to a point about fiscal responsibility that deserves direct attention. The state's position is that real-time simultaneous interpretation technology is not available to the Department. What has not been addressed is whether the Department has actually inquired of the South Dakota Unified Judicial System whether their existing equipment could be made available — a question I asked in my April 17 communication that remains unanswered.

The deeper point is this: real-time simultaneous interpretation technology, once acquired, is an enduring public investment. It can be used in perpetuity across all future administrative proceedings, contested case hearings, and any other state process where a participant requires

Assumptions: 4 interpreters; 5 hearing days at 10 hours per day (50 hours per interpreter); 6 nights lodging each; mileage based on actual interpreter locations (Pierre: ~225 miles one way; Rapid City: ~57 miles one way; Manderson/Wounded Knee area: ~110 miles one way x2 interpreters).

| Scenario | Wages | Lodging | M&IE | Mileage | Total |
|---|---|---|---|---|---|
| State ceiling ($61.88/hr) | $12,376 | $3,360 | $1,924 | ~$703 | ~$18,363 |
| Requested floor ($150/hr) | $30,000 | $3,360 | $1,924 | ~$703 | ~$35,987 |
| Requested ceiling ($250/hr) | $50,000 | $3,360 | $1,924 | ~$703 | ~$55,987 |

The state will be compensating expert witnesses in this same proceeding at rates substantially higher than what is being offered to the Lakota interpreters. The interpreters being asked to serve EXNI 453 bring qualifications that are, by any objective measure, at least as specialized and considerably more rare. The wage gap between the state's proposed ceiling and the interpreters' requested floor is approximately $17,624 over the full five days. The interpreters are absorbing that difference. The state should understand what it is receiving.

**Preliminary Position Pending Interpreter Consensus**

The interpreters who have been proposed for these services are professionals. They have credentials, experience, and community standing that make them uniquely qualified to interpret in this proceeding. They are being asked to provide a service that the state has acknowledged it has never previously arranged in this context. They deserve to be compensated at a rate that reflects the actual difficulty and rarity of what is being asked.

I am continuing to work toward a consensus meeting with the interpreters and will communicate their collective response as promptly as possible. In the meantime, I am requesting the following from the Department before that meeting occurs:

1. Confirmation that a rate above $61.88 per hour will be considered, along with any documentation of other interpreter contracts the Department has used that would inform an appropriate rate.
2. Confirmation of whether the South Dakota Unified Judicial System has been contacted regarding simultaneous interpretation technology, and the result of that inquiry.
3. Confirmation that a four-person gender-balanced interpretation team will be considered as the structure for these services, with compensation to reflect the full hours of hearing attendance required of the entire team — not only the hours during which each individual interpreter is actively speaking.

I appreciate your continued engagement on this matter and your stated commitment to resolving it before May 18. The interpreters and the intervenors they serve are prepared to work cooperatively toward that outcome. We are not, however, in a position to accept terms that do

not reflect what adequate interpretation services for a proceeding of this complexity and duration actually require.

Please feel free to contact me directly with any questions.

Respectfully submitted,

Elizabeth Lone Eagle
Pro Se Intervenor
EXNI 453 — Contested Case Proceeding
7958 Lakota Prairie Drive
Apartment 53
Kyle, SD 57752
bridgeradvocate@gmail.com
605-200-6800


cc:    David McVey, Board Counsel
       Bob Morris, Hearing Officer
       Glenn Blumhardt, Chairman, Minerals and Mining Board
       Hunter Roberts, Secretary DANR
       Larry Rhodem, Governor of South Dakota
       Violet Catches, Interpreter
       Bud Lone Eagle, Sr.; Interpreter
       Duane Two Bulls, Interpreter
       Alex White Plume, Interpreter

**MEMORANDUM**

**TO:** Glenn Blumhardt
Chairman
South Dakota Board of Minerals and Environment
523 East Capitol Avenue Pierre, SD 57501

**FROM:** Elizabeth Lone Eagle
Pro Se Intervenor
EXNI 453 7958 Lakota Prairie Drive
Apartment 53
Kyle, SD 57752
bridgeradvocate@gmail.com

**DATE:** April 23, 2026

**RE:** Appellate Vulnerability Created by Inadequate Interpretation Services — EXNI 453

Chairman Blumhardt,

I am writing to you directly because the record reflects that you understand, better than most, the consequences of Board decisions that cannot withstand appellate scrutiny. At the March 18, 2026 hearing, you advised the Board to seek judicial review of the Fall River County Uranium Ordinance before proceeding. The Board declined that advice. That decision, and its consequences, are now part of the record of this proceeding.

I raise that context not to relitigate it, but because it reflects your instinct to protect the Board's decisions from successful challenge on appeal. That instinct is sound. And it is precisely that instinct I am asking you to apply to the interpretation services issue now before the Board.

The complete record of EXNI 453, including all filings and orders related to interpretation services, is publicly available at:

https://danr.sd.gov/Environment/MineralsMining/Exploration/NewEXNIS.aspx

I am asking that you review it, particularly the following entries: the August 26, 2025 Lakota Language Interpreter Request; the November 13, 2025 Order by Hearing Chairman on Motion Requesting Lakota Interpreter Services; and all subsequent filings through the present date.

**The Appellate Vulnerability Is Specific and Documentable**

An administrative decision must be based on a complete and legally sufficient record. If the Board grants or denies CNEC's permit application following a hearing in which Lakota-speaking intervenors could not meaningfully participate — because interpretation was inadequate, because interpreters were unable to sustain accurate translation of highly technical testimony

for ten hours per day, or because the state declined to invest in simultaneous interpretation technology — the resulting record will contain what courts describe as linguistic gaps.

Courts have consistently held that agency decisions based on inadequate records are arbitrary and capricious. Under Loper Bright Enterprises v. Raimondo, 144 S.Ct. 2244 (2024), which ended Chevron deference, a reviewing court will independently evaluate whether the Board's procedural choices met the constitutional standard for a fair hearing. The Board cannot claim deference for a process that denied meaningful participation to a class of intervenors on the basis of language.

Lau v. Nichols, 414 U.S. 563 (1974), established that the mere provision of a resource is not sufficient if the resource does not enable meaningful participation. Providing interpreters who are inadequately compensated, working under impossible conditions, and unable to coin the technical vocabulary the proceeding requires is not meaningfully different from providing no interpretation at all — and a reviewing court will evaluate it accordingly.

Goldberg v. Kelly, 397 U.S. 254 (1970), established that when agency action affects individual rights — as a uranium exploration permit affecting land, water, cultural sites, and treaty-adjacent interests clearly does — due process requires an effective opportunity to be heard. If Lakota-speaking intervenors cannot follow the scientific testimony about uranium impacts on their water and lands because the interpretation is inadequate, their opportunity is not effective.

The consequence of a successful due process challenge is not a modified order. It is a vacated decision and a new proceeding — at full cost to the state, to all parties, and to the Board's institutional credibility.

## What the Current Negotiation Is Producing

DANR is currently negotiating with proposed interpreters at a rate of $43.75 to $61.88 per hour, derived from an informal survey of what South Dakota courts pay for general interpreter services. That benchmark is inappropriate for a critically endangered language in a highly technical proceeding. It is also being applied to a proposed "tag team" structure — two interpreters splitting the hearing day — that does not reflect how Lakota interpretation actually works.

The interpreters needed for this proceeding will be performing linguistic engineering: creating new Lakota vocabulary for uranium geology, aquifer science, and administrative procedure terms that have no established equivalents in the language. That work requires every interpreter to be present throughout the hearing — not just when they are actively speaking — to maintain continuity of the terminology being developed in real time. A two-person split-day arrangement cannot produce a reliable, continuous interpretation record. A four-person gender-balanced team, present throughout, is the minimum structure that can.

The difference in total cost between the state's proposed rate and an adequate rate is approximately $17,000 over five days — a fraction of what the Board would spend on a single day of re-litigation.

## Helen's Law and What It Means for This Proceeding

The Legislature passed HB 1219 — Helen's Law — because the Board's own hearing chair denied a legally sound request for interpretation services in November 2025. Governor Rhoden signed it on March 9, 2026. The Board elected to provide interpretation services for the May 18-22 hearing voluntarily, in advance of the statute's July 1, 2026 effective date. That was the right decision. What it now requires is follow-through that is actually constitutionally adequate.

The first proceeding conducted under the shadow of Helen's Law cannot be the one that demonstrates why the law was necessary.

**What I Am Asking of You**

Chairman Blumhardt, you have both the authority and the institutional motivation to ensure this proceeding produces a record that will withstand appellate review. I am asking you to use that authority to:

1. Review the full EXNI 453 record, with particular attention to every filing related to interpretation services.
2. Direct that the interpreter compensation negotiation be resolved at a rate that reflects the actual complexity of what is being asked — not a benchmark drawn from a fundamentally different context.
3. Ensure that a four-person interpretation team structure is authorized, with all interpreters compensated for their full attendance throughout the hearing.
4. Authorize an inquiry to the South Dakota Unified Judicial System regarding simultaneous interpretation technology — a question raised twice in writing, still unanswered.

The Board's decisions in EXNI 453 will be scrutinized. The interpretation services record will be part of that scrutiny. I am asking you to ensure there is nothing in that record that gives a reviewing court grounds to vacate what the Board decides.

Respectfully Submitted,

Elizabeth Lone Eagle
Pro Se Intervenor
EXNI 453 – Contested Case Proceeding
7958 Lakota Prairie Drive
Apartment 53
Kyle, SD 57752
bridgeradvocate@gmail.com
605-200-6800

**Attachment:** Letter to Mike Lees, DANR Minerals, Mining, and Superfund Program Administrator, dated April 23, 2026 (Exhibit A)

**MEMORANDUM**

**TO:** The Honorable Marty Jackley
Attorney General
State of South Dakota
1302 East Highway 14
Suite 1
Pierre, SD 57501

**FROM:** Elizabeth Lone Eagle
Pro Se Intervenor
EXNI 453
7958 Lakota Prairie Drive
Apartment 53
Kyle, SD 57752
bridgeradvocate@gmail.com

**DATE:** April 23, 2026

**RE:** Legal Exposure to the State and the AG's Office — EXNI 453 Interpretation Services and Conduct of David McVey, AAG

Attorney General Jackley,

I am writing to bring to your attention two related matters arising from EXNI 453 — Clean Nuclear Energy Corp.'s uranium exploration permit application currently pending before the Board of Minerals and Environment. Both matters involve legal exposure to the State of South Dakota. One involves your office directly.

The complete record of this proceeding is publicly available at:

https://danr.sd.gov/Environment/MineralsMining/Exploration/NewEXNIS.aspx

I am directing you to that record rather than summarizing it, because the documents speak for themselves. I would ask that your office review it in full, particularly every filing related to interpretation services from August 2025 forward, and every order issued by Hearing Chair Bob Morris during the pre-hearing period.

**The Legal Exposure**

EXNI 453 is a contested case proceeding — a quasi-judicial administrative hearing in which due process protections are mandatory. Lakota language interpretation services for the

Lakota-speaking intervenors in this proceeding were formally requested in August 2025. Those intervenors are limited English proficient individuals participating in a proceeding that directly affects their land, water, cultural sites, and the sacred landscapes of the southern Black Hills. The legal basis for the request was unambiguous: the Fourteenth Amendment, Lau v. Nichols, 414 U.S. 563 (1974), Goldberg v. Kelly, 397 U.S. 254 (1970), and Executive Order 13166, among other authorities, all establish that meaningful participation in such a proceeding requires language access sufficient to constitute a genuine opportunity to be heard.

Hearing Chair Bob Morris denied the request in November 2025. His denial is on the record. The hearing was subsequently rescheduled in part because interpretation services were not in place. The Legislature responded by passing HB 1219 — Helen's Law — which Governor Rhoden signed on March 9, 2026, and which takes effect July 1, 2026. The law was passed because the constitutional argument was sound. The Board's own conduct created the legislative record that produced it.

We are now eight months from the original request and less than four weeks from the May 18-22 rescheduled hearing, with interpretation services still being negotiated at terms that may not meet the constitutional floor. Under Loper Bright Enterprises v. Raimondo, 144 S.Ct. 2244 (2024), courts no longer defer to an agency's interpretation of its own procedural adequacy. A reviewing court will independently evaluate whether the hearing met the constitutional standard for meaningful participation. If it did not, the Board's decision — whatever it is — is vulnerable to being vacated on due process grounds, at cost to the state and all parties, in addition to potential civil rights liability under 42 U.S.C. § 1983, which was raised in writing before the Board during the pre-hearing proceedings.

Title VI of the Civil Rights Act requires any entity receiving federal funds to provide meaningful access to services for limited English proficient individuals. DANR and the Board receive federal funds. Lowballing interpreter rates to the point where qualified interpreters cannot be retained — or structuring interpretation services so inadequately that Lakota-speaking intervenors cannot follow the scientific testimony about uranium's impact on their water and lands — creates a disparate impact on Lakota speakers that a court applying Title VI would scrutinize carefully.

### The Matter Involving Your Office

David McVey serves as Board Counsel for the Board of Minerals and Environment. He is an Assistant Attorney General — an employee of your office, assigned to the Board in that capacity. His conduct throughout the pre-hearing period of EXNI 453 is part of the public record on the DANR website.

I will say directly what that record reflects: Mr. McVey has been largely unresponsive to intervenors throughout this proceeding. Inquiries directed to him have gone unanswered. His role in the pre-hearing process included advising on and supporting the procedural posture that resulted in the denial of interpretation services — a denial that was legally indefensible, that resulted in the rescheduling of the hearing, and that was directly responsible for the passage of Helen's Law.

The constitutional arguments for language access in this proceeding were placed before the Board in writing, with full citations, months before the November 2025 denial. Those arguments were sound enough that the Legislature responded to their rejection by changing state law. An Assistant Attorney General assigned to advise a state board advised, or failed to prevent, a course of conduct that the Legislature felt compelled to correct through statute.

That is not a reflection that reflects well on your office. Mr. McVey's conduct in this proceeding — the non-responsiveness, the participation in legally untenable procedural decisions, the role in a process that produced Helen's Law as a corrective measure — is something the Attorney General's office should be aware of and should address.

I am not asking for disciplinary action in this memorandum. I am informing you, as his supervising principal, of the record that exists, because that record will be scrutinized if and when this proceeding is challenged in court. Your office will be part of that scrutiny whether or not you choose to be aware of it now.

**Helen's Law: Right Direction, Incomplete Application**

HB 1219 reflects the Legislature's correct judgment that language access in administrative proceedings is a right. It takes effect July 1, 2026 — after this hearing. The fact that the Board elected to provide services voluntarily is appropriate. The fact that those services are being negotiated at rates and under structural conditions that may not produce constitutionally adequate interpretation is the remaining problem.

The first major contested case proceeding to fall under the shadow of Helen's Law should not be the one that tests whether the state learned anything from the failure that made the law necessary.

**What I Am Asking**

Attorney General Jackley, I am asking that your office:

1. Review the full EXNI 453 record, with particular attention to every filing related to interpretation services and every order issued by Hearing Chair Morris during the pre-hearing period.
2. Evaluate whether the current interpretation services negotiation will produce a constitutionally adequate record for the May 18-22 hearing — and if not, advise DANR and the Board accordingly.
3. Address Mr. McVey's conduct in this proceeding as you see fit, with the awareness that the public record documents it in detail.
4. Consider what civil rights exposure the state has accumulated through eight months of resistance to a constitutionally required accommodation — and what steps, if any, your office should take to document that the state corrected course before the hearing.

This proceeding has been needlessly hard for the people most affected by it. The law is not ambiguous. The constitutional obligations are not new. What has been missing is the

institutional willingness to fulfill them without being compelled. I am asking your office to be part of the solution rather than part of the record of the problem.

Respectfully Submitted,

Elizabeth Lone Eagle
Pro Se Intervenor
EXNI 453 – Contested Case Proceeding
7958 Lakota Prairie Drive
Apartment 53
Kyle, SD 57752
bridgeradvocate@gmail.com
605-200-6800

**Attachment:** Letter to Mike Lees, DANR Minerals, Mining, and Superfund Program Administrator, dated April 23, 2026 (Exhibit A)

**MEMORANDUM**

**TO:** The Honorable Larry Rhoden
Governor
State of South Dakota
500 East Capitol Avenue
Pierre, SD 57501

**FROM:** Elizabeth Lone Eagle
Pro Se Intervenor
EXNI 453
7958 Lakota Prairie Drive
Apartment 53
Kyle, SD 57752
bridgeradvocate@gmail.com

**DATE:** April 23, 2026

**RE:** Legal and Financial Risk to the State of South Dakota — EXNI 453 Interpretation Services
Failure

Governor Rhoden,

On March 9, 2026, you signed HB 1219 — Helen's Law — into law. That act reflected the
Legislature's recognition that language access in administrative proceedings is a constitutional
right, not an administrative courtesy. The law is a step in the right direction, and your signature
on it matters.

I am writing to inform you that the agency and board responsible for the proceeding that
prompted Helen's Law are now engaged in a course of conduct that undermines the very
purpose of that legislation — and that creates specific, documentable financial and legal risk for
the State of South Dakota.

The complete record of EXNI 453 — Clean Nuclear Energy Corp.'s uranium exploration permit
application before the Board of Minerals and Environment — is publicly available at:

https://danr.sd.gov/Environment/MineralsMining/Exploration/NewEXNIS.aspx

I am directing you to that record because it contains, in the state's own documents, the evidence
of what has gone wrong and why it matters to your administration.

**Eight Months of Preventable Failure**

Lakota language interpretation services for the intervenors in this proceeding were formally
requested in August 2025. The legal basis — the Fourteenth Amendment, Lau v. Nichols,

Goldberg v. Kelly, Executive Order 13166 — was placed before the Board in writing, with full citations. Hearing Chair Bob Morris denied the request in November 2025. The hearing was subsequently rescheduled from April 13-17, 2026, to May 18-22, 2026, in part because interpretation services were not in place. The Legislature passed Helen's Law in direct response to that denial.

We are now eight months from the original request, less than four weeks from the rescheduled hearing, and interpretation services are still being negotiated at terms that do not reflect the constitutional floor the law was passed to codify. The Lakota-speaking intervenors in this proceeding — whose land, water, cultural sites, and sacred spaces are directly at stake — have navigated more than a year of this proceeding without adequate language access. None of the hundreds of documents now posted on the DANR contested cases website have been translated for them. Not one.

It should not require this much work, from unpaid advocates and pro se intervenors, to compel a salaried state bureaucracy to do what the Constitution has always required. The people fighting hardest for due process in this proceeding are the ones who can least afford to fight.

**The Financial Risk Is Real and Specific**

DANR is currently proposing to compensate Lakota interpreters at $43.75 to $61.88 per hour — a rate derived from an informal survey of what South Dakota courts pay for general interpreter services in commonly spoken languages. That rate is not appropriate for a critically endangered language in a highly technical scientific and legal proceeding. The market rate for this level of service is $150 to $300 per hour. The interpreters, understanding the importance of this proceeding, have indicated willingness to work within the state's fiscal constraints. That professional courtesy does not resolve the constitutional adequacy question.

If the interpretation provided at the May 18-22 hearing is constitutionally inadequate — because the rate drove away qualified interpreters, because the proposed two-person split-day arrangement cannot produce a continuous and reliable interpretation record, or because the state declined to obtain available simultaneous interpretation technology — the resulting administrative record will be legally vulnerable. Under Loper Bright Enterprises v. Raimondo (2024), courts no longer defer to agency interpretations of their own procedural adequacy. A reviewing court will independently assess whether the hearing met the constitutional standard.

The cost of a successful due process challenge is a vacated Board decision and a new proceeding — at full cost to the state and all parties. That cost far exceeds the difference between the state's proposed interpretation rate and an adequate one. The state has already paid the cost of rescheduling this hearing once. Paying the cost of starting over entirely — because the interpretation provided was constitutionally insufficient — would be a far greater and entirely preventable expense for an administration that has a $300 million surplus and no legitimate fiscal basis for the shortfall.

Citing "fiscal feasibility" to justify inadequate due process compliance, while carrying a $300 million surplus, is not a defensible policy position. Courts and oversight bodies evaluating civil rights compliance do not grant exemptions to agencies with clear financial capacity to comply.

*16*

**Helen's Law Deserves a Worthy First Test**

HB 1219 exists because the constitutional arguments for language access in administrative proceedings were sound enough to change state law. The first major administrative proceeding to fall under its shadow — EXNI 453, May 18-22, 2026 — should not be the one that demonstrates why the law was necessary.

Your signature on Helen's Law carries an implicit commitment that South Dakota will do better. The agencies under your executive authority should reflect that commitment in how they conduct this hearing.

**What I Am Asking**

Governor Rhoden, I am asking that your office direct DANR and the Board of Minerals and Environment to ensure that interpretation services for the May 18-22 hearing are constitutionally adequate. Specifically:

1. That interpreter compensation be resolved at a rate reflecting the actual expertise and difficulty of what is required, not a benchmark drawn from an inapplicable context.
2. That a four-person gender-balanced interpretation team be authorized and fully compensated for their presence throughout the hearing.
3. That an inquiry be made to the South Dakota Unified Judicial System regarding available simultaneous interpretation technology — a question that has been raised twice in writing and remains unanswered.

The Lakota-speaking intervenors in this proceeding are South Dakotans. They deserve the same meaningful access to their government's proceedings as every other citizen. That is what the Constitution requires. It is what Helen's Law codifies. And it is what your administration should ensure.

Respectfully Submitted,

Elizabeth Lone Eagle
Pro Se Intervenor
EXNI 453 – Contested Case Proceeding
7958 Lakota Prairie Drive
Apartment 53
Kyle, SD 57752
bridgeradvocate@gmail.com
605-200-6800

**Attachment:** Letter to Mike Lees, DANR Minerals, Mining, and Superfund Program Administrator, dated April 23, 2026 (Exhibit A)

**MEMORANDUM**

**TO:** Hunter Roberts
Secretary
Department of Agriculture and Natural Resources
523 East Capitol Avenue
Pierre, SD 57501

**FROM:** Elizabeth Lone Eagle
Pro Se Intervenor
EXNI 453
7958 Lakota Prairie Drive
Apartment 53
Kyle, SD 57752
bridgeradvocate@gmail.com

**DATE:** April 23, 2026

**RE:** Institutional Integrity and Legal Liability Risk in EXNI 453 — Lakota Interpretation Services

Secretary Roberts,

I am writing to bring to your direct attention a situation in EXNI 453 — Clean Nuclear Energy Corp.'s uranium exploration permit application currently before the Board of Minerals and Environment — that poses a significant and unnecessary legal liability risk to the State of South Dakota, to DANR, and to the integrity of the administrative record your department is responsible for maintaining.

The complete record of this proceeding, including every motion, order, filing, and correspondence relevant to the concerns raised in this memorandum, is publicly available on DANR's own contested cases website at:

https://danr.sd.gov/Environment/MineralsMining/Exploration/NewEXNIS.aspx

I am directing you to that record because it documents, in the state's own filings and orders, a pattern of procedural failures regarding Lakota language interpretation services that now threatens the legal sufficiency of the entire proceeding. I would ask that you or a member of your staff review it in full. The intervenors in this matter have had to navigate every document on that page without assistance. The least the state can do is assign a salaried staff member to read it.

**The Core Problem**

Interpretation services for Lakota-speaking intervenors were formally requested in August 2025 — nearly eight months ago. That request is documented on the DANR website: "August 26, 2025 Filing — Lakota Language Interpreter Request." The legal basis for that request was not ambiguous. The Fourteenth Amendment's due process guarantees, reinforced by Lau v. Nichols, 414 U.S. 563 (1974), Executive Order 13166, and Goldberg v. Kelly, 397 U.S. 254 (1970), established that meaningful participation in a quasi-judicial proceeding requires language access sufficient to ensure a genuine opportunity to be heard. Those arguments were placed before the Board in writing, with full legal citations.

Hearing Chair Bob Morris denied the request. His denial is documented on the same website: "November 13, 2025 Order by Hearing Chairman on Motion Requesting Lakota Interpreter Services." That denial was wrong — wrong legally, and wrong morally. It was wrong enough that the South Dakota Legislature responded by passing HB 1219 — Helen's Law — which Governor Rhoden signed on March 9, 2026. The law takes effect July 1, 2026. The Board's own conduct in this proceeding is the reason that law now exists.

The hearing was subsequently rescheduled from April 13-17, 2026, to May 18-22, 2026, in part because interpretation services were not in place. We are now less than four weeks from the rescheduled hearing, and interpretation services are still being negotiated — on terms that, as I will explain, create their own legal vulnerabilities.

**The Current Negotiation Creates New Risk**

DANR's Minerals, Mining, and Superfund Program Administrator, Mike Lees, has proposed compensating Lakota interpreters at $43.75 to $61.88 per hour, based on an informal survey of what South Dakota judicial circuits pay for general interpreter services. That rate is not appropriate for this context, and applying it creates a specific and documentable legal risk.

The interpreters needed for EXNI 453 are not performing a mechanical translation task. They are being asked to provide interpretation of highly technical scientific, legal, and regulatory testimony — uranium geology, aquifer hydrology, cultural resource law, administrative procedure — in a language for which none of this vocabulary exists. They will be performing what professional translation standards call linguistic engineering: creating new Lakota terminology in real time, under hearing conditions, for concepts like "in situ leach mining" or "radionuclide sequestration" that have no established Lakota equivalents. That work is recognized in the professional translation industry as a separate, higher-cost consulting service, typically billed well above standard interpretation rates.

The market rate for Lakota language interpretation in a specialized legal and scientific context is $150 to $300 per hour. The interpreters, understanding the critical nature of this proceeding and the importance of ensuring it moves forward, have indicated a willingness to work within the state's fiscal constraints. That willingness is a professional courtesy extended in the public interest. It should not be exploited.

If the rate offered is so low that it drives away the only qualified interpreters capable of creating the necessary Lakota terminology, the state will face a proceeding in which Lakota-speaking intervenors cannot meaningfully participate — which is precisely the constitutional failure that triggered the August 2025 request, the November 2025 denial, and the subsequent legislation. The state would be repeating the same error through a different mechanism.

Under Loper Bright Enterprises v. Raimondo, 144 S.Ct. 2244 (2024), courts no longer defer to an agency's interpretation of its own procedural adequacy. A court reviewing this record would independently assess whether the interpretation services provided were constitutionally sufficient. "We tried, but we couldn't afford better" is not a defense available to a state carrying a $300 million surplus.

**The Administrative Record Is Vulnerable**

An administrative decision must be based on a complete and legally adequate record. If Lakota-speaking intervenors cannot meaningfully follow, respond to, or participate in the technical testimony at the hearing — because the interpretation is inadequate, because the interpreters are fatigued from impossible working conditions, or because the state refused to invest in simultaneous interpretation technology that would allow real-time access — the hearing record will contain linguistic gaps. Courts have consistently held that an agency decision based on an inadequate record is arbitrary and capricious. That is the standard under which any appeal of the Board's permit decision would be evaluated.

The cost of re-litigating this entire proceeding — which would result from a successful due process challenge on appeal — far exceeds the cost of providing adequate interpretation services now. The state has already paid the cost of rescheduling once. It cannot afford to pay the cost of starting over entirely.

**Helen's Law Is a Step in the Right Direction — But Not Enough for This Hearing**

HB 1219 reflects the Legislature's recognition that language access in administrative proceedings is a right, not a privilege. Governor Rhoden was right to sign it. It takes effect July 1, 2026 — after the May 18-22 hearing. The Board and DANR have elected to provide interpretation services for this hearing voluntarily, in advance of the statute's effective date. That decision reflects appropriate institutional judgment.

What it requires now is follow-through that is actually adequate. Helen's Law will mean nothing if the first proceeding it shadows is conducted with interpretation services that fall below the constitutional floor the law was passed to codify.

**What I Am Asking of You**

The people most affected by the decisions made in EXNI 453 — Lakota-speaking intervenors whose land, water, cultural sites, and sacred spaces are at stake — have been navigating this proceeding for more than a year without adequate access to its documents, its process, or its proceedings. They have done so because they had no other choice. They still have no other

choice. What they are asking for is not extraordinary. They are asking for what the Constitution has always required.

I am asking you, as DANR Secretary, to:

1. Review the full EXNI 453 record at https://danr.sd.gov/Environment/MineralsMining/Exploration/NewEXNIS.aspx, with particular attention to every filing related to interpretation services from August 2025 forward.
2. Direct your staff to resolve the interpreter compensation negotiation at a rate that reflects the actual nature and difficulty of the services required — not the rate South Dakota pays for Spanish-language court interpretation.
3. Authorize inquiry to the South Dakota Unified Judicial System regarding whether existing simultaneous interpretation technology can be made available for the May 18-22 hearing — a question that has been raised twice in writing and has not been answered.
4. Ensure that the interpretation services in place for May 18-22 are constitutionally adequate, not merely technically present.

It should not require this much effort to compel paid public servants to do what the law already requires, while the people most directly affected go without. I am bringing this to your attention because you have the authority to fix it. I am asking you to use it.


Respectfully Submitted,

Elizabeth Lone Eagle
Pro Se Intervenor
EXNI 453 – Contested Case Proceeding
7958 Lakota Prairie Drive
Apartment 53
Kyle, SD 57752
bridgeradvocate@gmail.com
605-200-6800


**Attachment:** Letter to Mike Lees, DANR Minerals, Mining, and Superfund Program Administrator, dated April 23, 2026 (Exhibit A)



# 2026 South Dakota Legislature

# House Bill 1219

# ENROLLED

AN ACT

**ENTITLED An Act to require the provision of interpreter or translator services for parties to an administrative contested case.**

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF SOUTH DAKOTA:

**Section 1. That § 1-26-18 be AMENDED:**

**1-26-18.** Opportunity must be afforded all parties to respond and present evidence on issues of fact and argument on issues of law or policy. However, each agency, upon the motion of any party, may dispose of any defense or claim:

(1)     If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and a party is entitled to a judgment as a matter of law; or

(2)     At the close of the evidence offered by the proponent of the defense or claim, if the agency determines that the evidence offered by the proponent of the defense or claim is legally insufficient to sustain the defense or claim.

A party to a contested case proceeding may appear in person or by counsel, or both; may be present during the giving of all evidence; may obtain the services of a translator or interpreter as provided in chapter 19-3, with the translator or interpreter's compensation fixed, paid, and collected as provided in sections 2 and 3 of this Act; may have reasonable opportunity to inspect all documentary evidence; may examine and cross-examine witnesses; may present evidence in support of the party's interest; and may have subpoenas issued to compel attendance of witnesses and production of evidence in the party's behalf.

**Section 2. That a NEW SECTION be added to chapter 1-26:**

When a witness or party needs a language interpreter or translator in a contested case proceeding, the agency required by law to determine the matter, as referenced in subdivision 1-26-1(2), shall procure and appoint a disinterested interpreter or translator.

The agency shall compensate the interpreter or translator for reasonable and just services provided in the proceeding. The payment for the services of the interpreter or translator must be made from moneys appropriated for the operation of the agency.

**Section 3. That a NEW SECTION be added to chapter 1-26:**

The prevailing party in a contested case proceeding may recover expenditures, for interpreter or translator services necessarily incurred in gathering and procuring evidence or bringing the contested case, which are not otherwise covered pursuant to section 2 of this Act.

26.156.10                                3                                1219

An Act to require the provision of interpreter or translator services for parties to an administrative contested case.

I certify that the attached Act originated in the:

House as Bill No. 1219

_____
Chief Clerk of the House

_____
Speaker of the House

Attest:

_____
Chief Clerk of the House

_____
President of the Senate

Attest:

_____
Secretary of the Senate

Received at this Executive Office this _____ day of _____, 2026 at _____M.

By _____
for the Governor

The attached Act is hereby approved this _____ day of _____, A.D., 2026

_____
Governor

**STATE OF SOUTH DAKOTA,**

ss.

Office of the Secretary of State

Filed _____, 2026 at _____ o'clock ___M.

_____
Secretary of State

By _____
Asst. Secretary of State

House Bill No. 1219
File No. _____
Chapter No. _____

HB1219 ENROLLED

May 19, 2026

Affidavit of Vonda Evon Long-High Hawk

I, Vonda Evon Long-High Hawk, do upon penalty of perjury affirm that the video evidence presented as an exhibit in the attached Verified Complaint for Emergency Injunctive and Declaratory Relief was taken by me on Tuesday, May 19, 2026 during the morning break in the contested case hearing for South Dakota Department of Agriculture and Natural Resources application EXNI 453 in Hot Springs, South Dakota.

I took the video because we were in the middle of a recess and I saw them (David McVey and Bob Morris) come off the stage and walk toward Elizabeth Lone Eagle. Earlier in the session, Elizabeth had addressed the Board regarding the heavy presence of police and when she was finished one of the cops started walking down the aisle toward her. She had to tell the officer twice to leave her alone and held her hand up. When I saw the two come off the stage I wanted to make sure there was video evidence of their intimidation of Elizabeth.

Later, Elizabeth explained the circumstances, but the first 3 minutes of the video capture part of the conversation she was having regarding the violation of due process rights they were perpetrating on the elderly Lakota language speakers who are intervenors in this matter.

Signed on this day of _19___ May, 2026

Vonda Evon Long-High Hawk
PO Box 413
Eagle Butte, SD 57625

Sworn and Signed before me on this __19____ day of May, 2026

Elaine Mato Tama Hece
Notary Public

My Commission expires on March 28, 2028